## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| DOWNEY FINANCIAL CORP., | : | Case No. 08-13041-(CSS) |
| | : | |
| | : | |
| Debtor. | : | |
| | : | |
| MONTAGUE S. CLAYBROOK, in his capacity as | : | |
| Chapter 7 Trustee for | : | Adversary Proceeding |
| THE DEBTOR CORP., | : | No. 10-53731 (CSS) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FEDERAL DEPOSIT INSURANCE | : | |
| CORPORATION, in its capacity as Receiver | : | |
| for Downey Savings & Loan Association, F.A. | : | |
| | : | |
| Defendant. | : | |
| | : | |
| MONTAGUE S. CLAYBROOK, in his capacity as | : | |
| Chapter 7 Trustee for | : | Adversary Proceeding |
| THE DEBTOR CORP., | : | No. 10-55567 (CSS) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FEDERAL DEPOSIT INSURANCE | : | |
| CORPORATION, in its capacity as Receiver | : | |
| for Downey Savings & Loan Association, F.A. | : | |
| | : | |
| Defendant. | : | |

## OPPOSITION OF THE TRUSTEE TO THE MOTION OF
## THE FEDERAL DEPOSIT INSURANCE CORPORATION,
## IN ITS CAPACITY AS RECEIVER FOR DOWNEY SAVINGS AND LOAN,
## FOR CONSOLIDATION OF ADVERSARY PROCEEDINGS
## PURSUANT TO FED. R. CIV. P. 42

Dated: January 3, 2011
Wilmington, DE

**FOX ROTHSCHILD LLP**

By:     */s/ L. Jason Cornell*
        L. Jason Cornell
        (DE Id. No. 3821)
        919 North Market Street, Suite 1300
        Wilmington, DE 19801-3046
        Tel (302) 654-7444/Fax (302) 656-8920
        srennie@foxrothschild.com

        -and-

        Michael Menkowitz
        William H. Stassen
        2000 Market Street, 20th Floor
        Philadelphia, PA 19103
        Tel (215) 299-2897/Fax (215) 299-2150
        mmenkowitz@foxrothschild.com
        wstassen@foxrothschild.com

        -and-

        Raymond M. Patella
        1301 Atlantic Avenue
        Midtown Building - Suite 400
        Atlantic City, NJ 08401
        Tel (609) 572-2254/Fax (609) 348-6834
        rpatella@foxrothschild.com

        *Attorneys for Montague S. Claybrook,
        Chapter 7 Trustee for the Estate of Downey
        Financial Corp.*

# TABLE OF CONTENTS

NATURE and STAGE OF THE PROCEEDINGS ........................................................................ 1

SUMMARY OF THE ARGUMENT .......................................................................................... 1

RELEVANT STATEMENT OF FACTS AND PROCEDURAL BACKGROUND..................... 3

    The Downey Financial Bankruptcy Case ............................................................................ 3

    The Receiver's Consent to the Bankruptcy Court's Jurisdiction........................................ 4

    The Trustee's Lawsuits against the Receiver...................................................................... 6

    The Trustee's Lawsuits Relating to Tax Refunds................................................................ 7

ARGUMENT.............................................................................................................................. 8

I.    THIS COURT SHOULD DENY THE RECEIVER'S REQUEST TO
       CONSOLIDATE THE ESTATE PROPERTY/AUTOMATIC STAY
       VIOLATION COMPLAINT WITH "PORTIONS" OF THE TRUSTEE'S
       OBJECTION TO THE FDIC'S CLAIM ............................................................................ 8

II.   THIS COURT SHOULD DENY THE RECEIVER'S REQUEST THAT THE
       TRUSTEE'S PREFERENTIAL AND FRAUDULENT TRANSFER CLAIMS
       BE "HELD IN ABEYANCE" ........................................................................................... 11

    A.    This Court Has Jurisdiction Over The Parties and Claims Asserted in this
          Lawsuit................................................................................................................. 12

         1.    The Receiver Has Consented to the Bankruptcy Court's
              Jurisdiction over the Receiver.................................................................... 12

         2.    This Court Has Original Jurisdiction Over the Trustee's
              Preferential Transfer and Fraudulent Conveyance Claims Pursuant
              to 28 U.S.C. §1334.................................................................................... 14

    B.    It Would Be Far More Efficient and Expedient for This Court to Hear the
          Trustee's Claims .................................................................................................. 17

         1.    Numerous claims and issues pending in this Court will directly
              impact other claims asserted in this case, making it more
              appropriate for this Court to hear these claims ......................................... 17

         2.    It Would Be More Efficient for this Court to Decide The Claims
              Asserted by the Trustee............................................................................. 19

         3.    The Trustees' claims were filed first in this Court .................................... 19

| | 4. | The D.C. Court has shown a preference to let Bankruptcy Courts decide these sorts of claims | 20 |

| CONCLUSION | | | 21 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Brock v. Morysville Body Works, Inc.,
   829 F.2d 383 (3d Cir. 1987)..................................................................................................14

Farahmand v. Rumsfeld,
   No. CIV.A. 02-1236, 2002 WL 31630709 (E.D. Pa. Nov. 20, 2002) ..................................9, 10

Foster-Eli v. Beretta U.S.A. Corp.,
   163 F. Supp. 2d 67 (D.D.C. 2001)..........................................................................................19

Grandfinanciera v. Nordberg,
   492 U.S. 33 (1989)..................................................................................................................13

Grupke v. Linda Lori Sportswear, Inc.,
   174 F.R.D. 15 (E.D.N.Y. 1997)..............................................................................................14

In re All Season's Kitchen,
   145 B.R. 391 (Bankr. D. Vt. 1992)..............................................................................13, 15, 16

In re Best Prods. Co., Inc.,
   Nos. 93 Civ. 1115, 93 Civ. 1149, 1994 WL 141970 (S.D.N.Y. Apr. 20, 1994)...............13, 15

In re Continential Fin. Resources,
   149 B.R. 260 (Bankr. D. Mass. 1993), aff'd, No. 93-10318-H, slip op. (D. Mass. May
   24, 1993) ..................................................................................................................................13

In re Devitt,
   126 B.R. 212 (Bankr. D. Md. 1991) .......................................................................................19

In re EXDS, Inc.,
   No. 03-532, 2004 WL 503545 (D. Del. Mar. 5, 2004) ............................................................13

In re Parker North American Corp.,
   24 F.3d 1145 (9th Cir. 1994) .............................................................................................15, 16

In re Purcell,
   141 B.R. 480 (Bankr. D. Vt. 1992), aff'd, 150 B.R. 111 (D. Vt. 1993) ..................................13

In re Tamposi Family Inv. Props.,
   159 B.R. 631 (Bankr. D. N.H. 1993) ......................................................................................13

In re Texas Eastern Transmission Corp.,
   15 F.3d 1230 (3d Cir.), cert. denied, 513 U.S. 915 (1994) ......................................................14

-iii-

In re Yiakas,
Case No. 91-12575-CJK, 1992 Bankr. LEXIS 1642 (Bankr. D. Mass. July 17, 1992)...........13

Katchen v. Landy,
382 U.S. 323 (1966)...................................................................................................................13

Langenkamp v. Culp,
498 U.S. 42 (1990).....................................................................................................................12

Rare, LLC v. Marciano (In re Rare, LLC),
298 B.R. 762 (Bankr. D. Colo. 2003).............................................................................15, 16, 20

Washington Bancorp. v. FDIC,
No. 95-1340, 1996 WL 148533 (D.D.C. March 19, 1996)........................................................16

Washington Mutual, Inc. v. FDIC,
Civil Action No. 09-533 (D.D.C. January 7, 2010) (RMC) .....................................................20

**STATUTES**

11 U.S.C. § 105(a) .......................................................................................................................7

11 U.S.C. § 362..............................................................................................................................7

11 U.S.C. § 502(d).......................................................................................................................17

11 U.S.C. § 502(h).......................................................................................................................18

28 U.S.C. § 660...........................................................................................................................15

28 U.S.C. § 660(b).......................................................................................................................15

28 U.S.C. §1334.....................................................................................................................14, 16

28 U.S.C. §1334(b)..................................................................................................................14, 15

28 U.S.C. § 1334(e)(1)................................................................................................................16

28 U.S.C. § 1821(d)(13)(D).........................................................................................................12

**OTHER AUTHORITIES**

Black's Law Dictionary at 56 (1979)..........................................................................................14

9 C. Wright & A Miller, *Federal Practice and Procedure*, § 2382 (2008)..............................9, 10

Plaintiff, Montague S. Claybrook, as Chapter 7 Trustee (the "Trustee") for the

bankruptcy estate of Downey Financial Corp., by and through his counsel, Fox Rothschild LLP,

hereby responds to the motion filed by defendant, the Federal Deposit Insurance Corporation (the

"FDIC"), as receiver for Downey Savings & Loan Association, F.A. (the "Receiver").

## NATURE AND STAGE OF THE PROCEEDINGS

On September 3, 2010, the Trustee filed his Renewed and Expanded Motion for Entry of

an Order Pursuant to 11 U.S.C. §§ 105(a) and 362 Finding that the Federal Deposit Insurance

Corporation as Receiver for Downey Savings & Loan Association, F.A., Violated the Automatic

Stay [D.I. 442]. At the insistence of the Receiver, this Court required the Trustee to commence

an adversary proceeding to address the stay violations as well as for a determination of whether

tax refunds due from the Internal Revenue Service on account of returns filed by the Trustee are

property of the bankruptcy estate [D.I. 501]. Accordingly, on October 28, 2010, the Trustee filed

a complaint commencing Adv. Pro. No. 10-53731 (CSS) which the Receiver has answered. On

November 1, 2010, this Court set the matter for trial on May 2-4, 2010.

On October 29, 2009, the Receiver filed its proof of claim [Claim No. 25]. On November

24, 2010, the Trustee filed a complaint commencing Adv. Pro. No. 10-55567 (CSS) objecting to

the Receiver's claim and asserting counterclaims against the Receiver. The Receiver has not

answered the complaint and the matter has not yet been scheduled for trial.

## SUMMARY OF THE ARGUMENT

1.    In its Motion, the Receiver requests that this Court consolidate the Trustee's

claims relating to ownership of certain tax refunds and the Receiver's repeated violations of the

automatic stay to obtain possession of the tax refunds (Adversary Proceeding No. 10-53731)

("Estate Property/Automatic Stay Violation Complaint") with certain, unspecified portions of the

Trustee's 277-paragraph, 25-count, Complaint objecting to the Receiver's Proof of Claim, seeking equitable subordination of the Receiver's claims and asserting numerous counterclaims (Adversary Proceeding No. 10-55567) ("Objection to Proof of Claim").

2.    The Receiver also asks this Court to "hold in abeyance" "those portions" of the Objections to Claim that "share or rely upon common questions of law or fact with" those claims raised in the complaint filed in Adv. Pro. No. 09-51085-CSS (referred to by the Receiver as the "Delaware Transfers Action".[1]  The Receiver asserts that neither this Court nor the United States District Court for the District of Delaware properly has jurisdiction over such claims, and that an "abeyance" is appropriate so that the Receiver can move the District Court to transfer the claims to the United States District Court for the District of Columbia, which the Receiver claims has "original" jurisdiction over the claims pursuant to Section 1821(d)(13)(D) of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA").

3.    This Court should summarily deny the Receiver's Motion.

4.    Consolidation of the Estate Property/Automatic Stay Violation Complaint with portions of the Trustee's Objection to the Receiver's Proof of Claim would not advance the administration of justice. Rather, it would delay the current proceedings in the Estate Property/Automatic Stay Violation case with what would be significant voluminous discovery on issues that are tangential to the central issue of whether the tax refunds are property of the bankruptcy estate. That issue is quite different than the issues raised by the Trustee's Objection to the FDIC's Proof of Claim, and the Receiver never explains how they are "related" or involve "common issues" of law or fact. It is apparent that the Receiver is hoping to use consolidation to force a further delay in the current May 2011 trial date, never having to answer for its unlawful

---

[1] The FDIC's failure to identify "those portions" by paragraph number seems calculated to obscure the relief it seeks.

2

actions, even though the Court stated clearly that that date was "set in stone." Such a delay is inappropriate and would prejudice the orderly determination of the various matters before the Court. Thus, the Receiver cannot meet his burden of proving that consolidation would serve justice and judicial economy, and its Motion should be denied.

5. Moreover, it would be inappropriate and inefficient for this Court not to consider the Trustee's preferential and fraudulent transfer claims as part of the overall claims allowance process. This Court has full jurisdiction over these claims because, among other reasons, the Receiver consented to this Court's jurisdiction by filing a Proof of Claim. Moreover, this Court should exercise that jurisdiction because the claims are core bankruptcy proceedings that this Court is statutorily empowered and best equipped to decide as part of the claims allowance process. Indeed, the United States District Court for the District of Columbia ("D.C. Court"), and other courts, have determined that bankruptcy courts should, in the first instance, hear such claims.

## RELEVANT STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

### The Downey Financial Bankruptcy Case

Downey Financial was a holding company incorporated in the State of Delaware with its former principal place of business at 3501 Jamboree Road, Newport Beach, CA. Downey Financial was a holding company that owned, *inter alia*, Downey Savings.

On November 21, 2008, the Director of the Office of Thrift Supervision ("OTS") appointed the Federal Deposit Insurance Corporation as receiver for Downey Savings. On November 25, 2008 ("Petition Date"), Downey Financial commenced a voluntary case (the "Bankruptcy Case") pursuant to chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court").

3

On November 26, 2008, plaintiff Montague S. Claybrook was appointed by the Office of the United States Trustee as Chapter 7 Trustee of Downey Financial.

## The Receiver's Consent to the Bankruptcy Court's Jurisdiction

The Receiver has been, and is, an active participant in Downey Financial's Bankruptcy Case including, but not limited to, filing pleadings and/or motions and objections, appearing in Court and asserting that the Receiver is the bankruptcy estate's biggest creditor.

For example, the Receiver entered its appearance in the Bankruptcy Case and requested that all notices and papers be served upon its counsel [D.I. 15]. Its attorneys have been admitted to appear *pro hac vice* in the Bankruptcy Case [*see, e.g.*, D.I. 24, 29, 30, 294]. The Receiver has on four occasions filed papers seeking relief from the automatic stay in order to submit its own set of tax returns that compete with tax returns filed by the Trustee and to take other actions related to the tax returns [D.I. 286, 433, 482, 554]. The Receiver sought extensions of time to file its proof of claim, asserting that the Bankruptcy Court had "jurisdiction to consider th[e] matter." [D.I. 88]. The Receiver regularly expressed its views on the Trustee's retention and compensation of certain professionals and consultants in the case, asserting its claim to be the largest unsecured creditor. And it objected to the efforts by Downey Financial's officers and directors seeking a lift of the automatic stay so that they can use insurance policy proceeds to pay for their legal defense of various lawsuits against them, arguing that allowing such use of the insurance proceeds would "prejudice" not only "the Chapter 7 estate" but also "the estate's remaining creditors," including the Receiver, which called itself "the largest unsecured creditor in this case." [D.I. 194] It has sought affirmative relief from the Bankruptcy Court on no fewer than eight occasions, each time alleging that the Bankruptcy Court had jurisdiction to hear the matter.

4

Consistent with that involvement, on October 29, 2009, the Receiver filed a proof of claim in the Bankruptcy Case ("Proof of Claim") [Claim No. 25]. The Receiver asserted an "unliquidated" claim that "may be in excess of $2 billion." The Receiver purported to assert six types of claims: (1) "Capital Maintenance Claims"; (2) "Tax Related Claims"; (3) "Intercompany Claims"; (4) "Deposit Funds Claim"; (5) "Fraudulent Conveyance Claims"; (6) "Litigation Recovery Claims"; and (7) "Insurance Proceeds and Premium Recovery Claims."

The Receiver had previously requested an extension of time to file its proof of claim. That claim was, by court directive, originally required to be filed no later than March 18, 2009. The Receiver sought and received a seventh month extension of time to file its proof of claim.

By filing its proof of claim, the Receiver fully consented to the jurisdiction of the Bankruptcy Court over it and over all matters relating to the allowance or disallowance of that claim, as explained more fully below.

In response to the Receiver's Proof of Claim, the Trustee filed, on November 24, 2010, the Objection to Proof of Claim, seeking, *inter alia*, equitable subordination of any claims allowed to the Receiver, and counterclaiming for certain relief (hereinafter "Objection to Claim").

Among the Trustee's objections to the FDIC's claims were counterclaims asserting five preferential and fraudulent transfer claims relating to transfers of property (or an interest in property) made on or before the Petition Date by Downey Financial to Downey Savings or to certain third parties for the benefit of Downey Savings and an objection to the claim pursuant to 11 U.S.C. § 502(d) for failure to return those voidable transfers. The Trustee asserted five counts (Counts 13-17): (i) avoidance of allegedly preferential transfers under 11 U.S.C. § 547 (Count 13); (ii) recovery of actual and/or constructive fraudulent transfers under Section 548 (Count 14);

5

(iii) fraudulent transfers under Section 544(b) of the Bankruptcy Code and California law (Count 15); (iv) fraudulent transfers under Section 544(b) of the Bankruptcy Code and California law (Count 16); and (v) recovery of avoided transfers pursuant to Section 550 of the Bankruptcy Code (Count 17).

Such claims are "core" bankruptcy matters.

## The Trustee's Lawsuits against the Receiver

Prior to the filing of the Receiver's Proof of Claim and the Trustee's Objection to Claim, but after the Receiver was originally required by law to file its Proof of Claim, the Trustee filed two lawsuits in June 2009, first an adversary proceeding in this Court ("Delaware Transfer Action," attached as Exhibit A) and second a lawsuit in the United States District Court for the District of Columbia ("D.C. Court") (Case No. 1:09-CV-01247-JR) ("D.C. Transfer Action," attached as Exhibit B), against the Receiver as well as the FDIC in its corporate capacity. The Delaware Transfer Action was filed *before* the D.C. Transfer Action.

In both cases, the Trustee alleged that on or before the Petition Date, on numerous occasions, Downey Financial transferred property to, or caused its property (or an interest in its property) to be transferred to, Downey Savings or to certain third parties for the benefit of Downey Savings. The total amount of said transfers exceeds $80 million.

Both actions asserted five counts: (i) avoidance of allegedly preferential transfers under 11 U.S.C. § 547 (Count I); (ii) recovery of actual and/or constructive fraudulent transfers under Section 548 (Count II); (iii) fraudulent transfers under Section 544(b) of the Bankruptcy Code and California law (Count III); (iv) fraudulent transfers under Section 544(b) of the Bankruptcy Code and California law (Count IV); and (v) recovery of avoided transfers pursuant to Section 550 of the Bankruptcy Code (Count V).

6

Counts 1 to 5 of these two lawsuits assert substantially the same claims that are contained in Counts 13-17 of the Trustee's Objection to Claim against the Receiver.

When the two lawsuits were filed, the Receiver claimed that Section 1821(d)(13)(D) of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") operated to divest this Court of its subject matter jurisdiction over these core proceedings. The Trustee disagreed with the Receiver's position (for reasons set forth below).

Rather than litigate that issue at that time, the Trustee reached an agreement with the Receiver whereby the Trustee agreed to stay the Delaware Transfer Action. The parties explicitly agreed that the stay did not impact the Trustee's right to object to claims filed by the Receiver [Adv. D.I. 19]. That agreement was approved by Order of this Court. Both actions are currently pending, although on December 30, 2010, the Trustee filed a Motion to Stay the D.C. Transfer Action which is pending.

## The Trustee's Lawsuits Relating to Tax Refunds

The Trustee also brought an adversary proceeding in this Court titled "Complaint of the Trustee Seeking Declaratory Judgment Regarding Ownership of Tax Refunds under Section 541 of the Bankruptcy Code and for Violation of the Automatic Stay." (Adv. Pro No. 10-53731 (CSS)). In that proceeding, the Trustee alleged, *inter alia*, that under the Tax Sharing Agreement between Downey Financial and Downey Savings, certain tax refunds from the Internal Revenue Service are property of the bankruptcy estate. The Trustee also alleged that the Receiver committed numerous acts in willful violation of the automatic stay as set forth in 11 U.S.C. § 362(a) in an improper effort to block any tax refunds being paid to the Trustee.[2]

---

[2] The Trustee originally filed on September 3, 2010 the Chapter 7 Trustee's Renewed and Expanded Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a) and 362 Finding that the Federal Deposit Insurance Corporation as Receiver for Downey Savings & Loan Association, F.A., Violated the Automatic Stay [D.I. 442]. The Receiver initially agreed to hold an evidentiary hearing on that Motion on November 9, 2010. The Receiver then backtracked

7

## ARGUMENT

## I. THIS COURT SHOULD DENY THE RECEIVER'S REQUEST TO CONSOLIDATE THE ESTATE PROPERTY/AUTOMATIC STAY VIOLATION COMPLAINT WITH "PORTIONS" OF THE TRUSTEE'S OBJECTION TO THE FDIC'S CLAIM

The focus of the upcoming trial in the Estate Property/Automatic Stay Violation Case is on whether the Receiver's unlawful actions in trying to obtain the refunds for itself violated the automatic stay. At the repeated insistence of the Receiver, the trial includes whether the Tax Refunds are property of the estate. Now, the Receiver wants to add to the upcoming trial numerous other claims raised in the Trustee's Objection to the FDIC's Proof of Claim – in particular, Claims 6 and 19-22.[3]

The Receiver's claims of greater efficiency are red herrings and contrary to its real motives. If successful, the Receiver will continue its steadfast efforts to postpone the upcoming trial and ask for a postponement of the trial date to accommodate discovery on those additional claims. The Receiver also hopes that consolidating numerous claims and issues will complicate the upcoming trial and minimize the myriad unlawful acts forming the basis of the Trustee's claims alleging violations of the automatic stay by the Receiver. In short, the Receiver will pull out any trick out of its bag to prevent this Court, or the District Courts for either Delaware or the District of Columbia, from judicially reviewing the Receiver's actions. The Receiver cannot credibly argue to the contrary.

---

on its original agreement, insisting that the Trustee combine a determination of whether the Tax Refunds are property of the estate with the stay violation issue. On November 1, 2010, this Court set a three day trial on those two issues for May 2-4, 2011 and "set those dates in stone."

[3] For some reason, the Receiver does not attempt to identify all of the portions of the Trustee's Objection to the FDIC's Proof of Claim that the Receiver considers "related" to the Estate Property/Automatic Stay Violation Complaint. See Receiver Motion at 6 ("[T]he [Estate Property/Automatic Stay Violation Complaint] should be consolidated for all purposes with *the related portions* of the Complaint in the [Trustee's Objection to the FDIC's Proof of Claim]. See, e.g., Claims 6, 19-22 of the November Omnibus Action Complaint.") (emphases added).

This Court should not invite the Receiver's further requests for postponement of the trial date by granting consolidation. The issue of whether the tax refunds are property of the estate is pivotal and will directly impact the course and resolution of other issues in the Bankruptcy Case. It makes sense for the Court and parties to focus expeditiously on this central issue rather than embark in discovery on other claims that, the Receiver will argue, justifies yet another extension of the trial date. See, e.g., Farahmand v. Rumsfeld, No. CIV.A. 02-1236, 2002 WL 31630709, *2 (E.D. Pa. Nov. 20, 2002) ("A motion to consolidate may be denied ... if it will cause delay in one of the cases...") (citing 9 C. Wright & A Miller, *Federal Practice and Procedure*, § 2382 (1995)).

Indeed, given that the Trustee intends to move for summary judgment on the "property of the estate" issue, consolidating these actions may have the effect of making the litigation more expensive and burdensome, as the parties will have to engage in discovery on myriad issues even though the court's resolution of one of them, the "property of the estate" issue, may eliminate or modify those other issues.

The Receiver argues that because the Trustee's counterclaims relate in some fashion to the tax refunds, those claims should be consolidated with the claims asserted by the Trustee in the Estate Property/Automatic Stay Violation Complaint. But the Receiver never gives any explanation why the claims are "related" or why they "share or rely upon common questions of law or fact." See Receiver Motion at 9-10. The Receiver apparently wants the Court to figure it out without the Receiver's input.

In fact, these claims are quite different. The issue of who owns the refunds and whether the Receiver violated the automatic stay by its actions has nothing to do with (i) whether the Receiver should have a "claim" (*i.e.*, a right to payment) in the bankruptcy case; (ii) whether the

9

Trustee has any counterclaims to the Receiver's Claims; and (iii), if the Receiver has any allowed claims, whether those claims should be equitably subordinated pursuant to Section 510 of the Bankruptcy Code. One deals with ownership; the other deals with payment rights. Different rules of Bankruptcy Procedure apply. They are fundamentally different causes of action, and they deal with different underlying facts. Consolidating all of these claims and issues would create the potential for confusion during discovery and at trial. See Farahmand, 2002 WL 31630709 at *2. ("Where the evidence in one case is not relevant to the issues in the other, consolidation would create a likelihood of prejudice by confusing the issues.") (citation omitted).

The Receiver's purported concerns about expense and judicial economy are easily dismissed. As explained above, the issues are different and so discovery and trial will focus on different subjects. The Trustee is certainly willing to consent that any discovery in one action can be used in other actions involving the Trustee and the Receiver. That should be more than sufficient to address the Receiver's professed concerns.

It is the Receiver's burden of proving that consolidation is appropriate. See Farahmand, 2002 WL 31630709 at * 1; see generally 9 C. Wright & A Miller, *Federal Practice and Procedure*, § 2382 at p. 50 (2008) (same). Consolidation is a matter of this Court's "sound discretion" based on an assessment of the most efficient and just way to proceed. Id. The Receiver's requested relief would serve only to delay these proceedings, ramp up the parties' costs, impose greater burdens on the Court, and potentially confuse the issues. It would not simplify the litigation process, nor would it promote convenience and judicial economy. It is a bad idea, and this Court should deny the Receiver's Motion.

Lastly, while the Receiver complains about the Trustee commencing multiple "overlapping" actions, it is the Receiver, not the Trustee, that is multiplying proceedings. First,

10

if the Receiver would simply cease committing unlawful actions and submitting false claims to the Bankruptcy Court, the Trustee would not have to seek judicial redress. Second, the Receiver itself repeats in its answer and counterclaims to the Estate Property/Automatic Stay Violation Complaint those claims it has already asserted in its proof of claim. Putting aside the issue that the counterclaims themselves may violate the automatic stay, and perhaps even effectively moot this motion, the Receiver is purporting to muck up the otherwise clean and straightforward Estate Property/Automatic Stay Violation Complaint to delay having any sunlight shine on its unlawful actions. The Receiver also seeks in its recently filed Motion for Relief from the Stay [D.I. 554] to commence yet another action to recover the tax refunds which raise the same issues raised in the Trustee's complaint filed in the Court of Federal Claims. Thus, the premise of the Receiver's Motion – that the Trustee is multiplying proceedings – is false. It is the Receiver that is multiplying proceedings needlessly and that is regularly trying to delay the resolution of issues pivotal to the advancement of this Bankruptcy proceeding.

## II. THIS COURT SHOULD DENY THE RECEIVER'S REQUEST THAT THE TRUSTEE'S PREFERENTIAL AND FRAUDULENT TRANSFER CLAIMS BE "HELD IN ABEYANCE"

The Receiver asks this Court to "hold in abeyance" "those portions" of the Objections to Claim that "share or rely upon common questions of law or fact with" the Delaware Transfers Action. Which "portions" the Receiver wants held in "abeyance" the Receiver never actually says.

The Receiver further argues that an "abeyance" is appropriate so that the Receiver "may" file a motion to withdraw the reference so that the Bankruptcy Transfer Action and the unspecified "portions" of the Objection to Claim may be transferred to the D.C. Court. See Receiver's Motion at 7, 8, 11 (emphasis added). The Receiver claims that the D.C. Court, not

11

this Court, has original jurisdiction over the claims pursuant to Section 1821(d)(13)(D) of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA").

The Receiver's request should be denied for a number of reasons.

First, the Receiver cannot even represent that it <u>will</u> file a motion to withdraw the reference, instead asserting tentatively that it "may" do so. Since the Receiver cannot even assure the Court that it will undertake the very rationale for the Receiver's "abeyance" request, this Court should simply deny the request. When the Receiver is prepared to give such an assurance, it should file a new motion.

Second, contrary to the Receiver's contentions, this Court has jurisdiction to hear the Trustee's claims seeking to avoid and recover over $80 million in transfers from Downey Financial to Downey Savings. That is because, *inter alia*, the Receiver, under well-established precedent, consented to this Court's jurisdiction when it filed its Proof of Claim in this Court. Thus, there is no question that the Bankruptcy Court *can* hear these claims because it clearly has the jurisdiction over the parties and claims.

Second, this Court *should* exercise that jurisdiction because it would be far more efficient for the Bankruptcy Court to decide these claims as part of the overall claims allowance process that the Bankruptcy Code entrusts to this Court. Indeed, these claims may be affected by other issues and claims that are currently before this Court (but not before the D.C. Court). Thus, it makes complete sense for this Court, not the D.C. Court, to adjudicate these claims.

## A. This Court Has Jurisdiction Over The Parties and Claims Asserted in this Lawsuit

### 1. The Receiver Has Consented to the Bankruptcy Court's Jurisdiction over the Receiver

It is black letter law that a creditor filing a claim in bankruptcy thereby subjects itself to the exclusive jurisdiction of the bankruptcy court. <u>See Langenkamp v. Culp</u>, 498 U.S. 42, 44-45

12

(1990); Grandfinanciera v. Nordberg, 492 U.S. 33, 58-59 (1989); Katchen v. Landy, 382 U.S. 323, 335 (1966); see also In re EXDS, Inc., No. 03-532, 2004 WL 503545, *1 (D. Del. Mar. 5, 2004) ("[B]y filing its proof of claim, Defendant had subjected itself to the exclusive jurisdiction of the Bankruptcy Court and lost its right to a jury trial.").

Indeed, in Grandfinanciera, the United States Supreme Court held that when a party who files a claim in bankruptcy court is "met, in turn with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity." Thus, under that decision, not only has the Receiver consented to the jurisdiction of the Bankruptcy Court generally, the Receiver has further consented to the jurisdiction of the Bankruptcy Court over the claims asserted by the Trustee, including but not limited to preference claims, against the Receiver in response to the Receiver's claim.

And courts have regularly extended this principle by retaining jurisdiction over trustees' preference actions (or similar type claims) against the FDIC, holding that the FDIC's filing of a claim subjected itself to the jurisdiction of the bankruptcy court notwithstanding FIRREA. See, e.g., In re Tamposi Family Inv. Props., 159 B.R. 631, 634 (Bankr. D. N.H. 1993); In re Continental Fin. Resources, 149 B.R. 260, 263 (Bankr. D. Mass. 1993), aff'd, No. 93-10318-H, slip op. (D. Mass. May 24, 1993); In re All Season's Kitchen, 145 B.R. 391 (Bankr. D. Vt. 1992); In re Purcell, 141 B.R. 480, 483 (Bankr. D. Vt. 1992), aff'd, 150 B.R. 111 (D. Vt. 1993); In re Best Prods. Co., Inc., Nos. 93 Civ. 1115, 93 Civ. 1149, 1994 WL 141970, *5 (S.D.N.Y. Apr. 20, 1994); but see In re Yiakas, Case No. 91-12575-CJK, 1992 Bankr. LEXIS 1642, *3 (Bankr. D. Mass. July 17, 1992).

13

Thus, the Receiver has fully consented to this Court's jurisdiction by filing its Proof of

Claim in this Court.[4]

### 2. This Court Has Original Jurisdiction Over the Trustee's Preferential Transfer and Fraudulent Conveyance Claims Pursuant to 28 U.S.C. §1334

Contrary to the Receiver's contentions, this Court has original jurisdiction over the

Trustee's preferential transfer and fraudulent conveyance claims pursuant to 28 U.S.C. §1334,

which states:

> (b) Except as provided in subsection (e)(2), and notwithstanding
> any Act of Congress that confers exclusive jurisdiction on a court
> or courts other than the district court, the district courts shall have
> original but not exclusive jurisdiction of all civil proceedings
> arising under title 11, or arising in or related to cases under title 11.

Thus, even though the Receiver may argue that FIRREA, on its face, "confers exclusive

jurisdiction" in some other court, the Bankruptcy Court has "original but not exclusive

jurisdiction" over the Trustee's claims, which arise under title 11.

The Third Circuit has held that Section 1334 "alters the effect" of a federal statute's grant

of "exclusive" jurisdiction to another court. In Brock v. Morysville Body Works, Inc., 829 F.2d

383 (3d Cir. 1987), the Secretary of Labor petitioned the Third Circuit, in its original

---

[4] Further supporting the Receiver's consent to the Bankruptcy Court's jurisdiction is the Receiver's extensive and proactive involvement in the Bankruptcy Court proceedings. It is black letter law that "a party is deemed to have consented to jurisdiction if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum." In re Texas Eastern Transmission Corp., 15 F.3d 1230, 1236 (3d Cir.), cert. denied, 513 U.S. 915 (1994). Indeed, "appearing and seeking affirmative relief from the court 'is the paradigm of waiver to the court's in personem jurisdiction.'" Grupke v. Linda Lori Sportswear, Inc., 174 F.R.D. 15, 18 (E.D.N.Y. 1997) (citation omitted). "Affirmative relief" is defined as "[r]elief, benefit or compensation." Black's Law Dictionary at 56 (1979).

Here, the Receiver, calling itself the "largest unsecured creditor in this case," has plainly demonstrated a "willingness to engage in extensive litigation" in the Bankruptcy Court by entering its appearance, asserting purported property rights to millions of dollars in tax refunds and seeking affirmative relief from the Bankruptcy Court on numerous occasions. The Receiver's efforts to assert property rights and preserve the estate's assets for the benefit of creditors including the Receiver itself is a "benefit" that it has received as a result of its proactive, affirmative involvement in this case. For this reason, too, the Receiver has consented to the Bankruptcy Court's jurisdiction over it.

14

jurisdiction, seeking summary enforcement of an Occupational Safety and Health Administration ("OSHA") citation against a chapter 11 debtor. The source of the Third Circuit's jurisdiction was 28 U.S.C. § 660, which, the Third Circuit held, "grants us original and exclusive jurisdiction." Id. at 385. That did not answer the question, however, as the Third Circuit looked at 28 U.S.C. § 1334(b) and ruled that "section 1334(b) alters the effect of the jurisdictional grant of section 660(b) by expressly rendering it non-exclusive...." In other words, the Third Circuit held that both the Third Circuit and the bankruptcy court had concurrent jurisdiction over the issues raised in the Secretary of Labor's petition.

Likewise, this Court, according to the express terms of Section 1334(b), has concurrent jurisdiction over the Trustee's preferential transfer and fraudulent conveyance claims despite FIRREA's placement of jurisdiction in other courts. This only makes sense, as the 9th Circuit observed, for "Bankruptcy courts have expertise in determining preference actions, which involve legal matters unique to the [Bankruptcy] Code." In re Parker North American Corp., 24 F.3d 1145, 1153 (9th Cir. 1994). Indeed, since the preference action implicates what is or is not property of the estate, that falls within the "exclusive province of the bankruptcy courts to determine..." Rare, LLC v. Marciano (In re Rare, LLC), 298 B.R. 762, 764 (Bankr. D. Colo. 2003). As a result, the Receiver's assertion that the Bankruptcy Court lacks jurisdiction is meritless. See also In re Parker North American Corp., 24 F.3d at 1150 ("Claimants must exhaust these administrative remedies [under FIRREA] before seeking district court *or bankruptcy court* review) (emphasis added).

Moreover, the fact that the Receiver filed a proof of claim with the Bankruptcy Court underscores that FIRREA does not divest the Bankruptcy Court of jurisdiction to hear these claims. See In re Best Prods. Co., Inc., Nos. 93 Civ. 1115, 93 Civ. 1149, 1994 WL 141970, *5

15

(S.D.N.Y. Apr. 20, 1994) ("Allowing the RTC to use § 1821(d)(13)(D) to force the withdrawal of the reference to the district court after the RTC had filed a proof of claim would be antithetical to the purpose of 28 U.S.C. § 1334 and would dramatically impair the bankruptcy court's ability to administer the debtors' estates.").

This is fully consistent with the bedrock principle that the Bankruptcy Court has exclusive jurisdiction to decide what is property of the estate. See 28 U.S.C. § 1334(e)(1) ("The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate . . . ."); see also In re Rare, 298 B.R. at 764 ("[I]t lies within the exclusive province of the bankruptcy courts to determine what interests are part of the estate."). As several courts have recognized, where the FDIC and a bankruptcy debtor assert competing claims to the same assets—the exact situation here —it falls to the Bankruptcy Court to determine, in the first instance, whether those assets in fact qualify as "estate assets." See All Seasons Kitchen, Inc. v. FDIC, 145 B.R. 391, 396-97 (D. Vt. 1992) (holding that the FIRREA Exhaustion Provisions did not apply to claim by debtor in bankruptcy proceeding challenging FDIC's lien against debtors' property: "Debtor's claim is precisely that FDIC has no asset . . . . If Debtor is correct, then we have jurisdiction to determine that Debtor is correct"); In re Parker, 24 F.3d at 1154 (upholding jurisdiction of bankruptcy court to adjudicate preference action against entities in receivership); Washington Bancorp. v. FDIC, No. 95-1340, 1996 WL 148533, *7 (D.D.C. March 19, 1996) ("There is 'not a scintilla of a suggestion that Congress intended that debtors who owe money to FDIC should have to go through the FIRREA claims process, nor any intent to deprive the Bankruptcy Court of jurisdiction to determine issues arising from FDIC's claims against those debtors' (quoting All Seasons, 145 B.R. at 397)).

Thus, not only does this Court have jurisdiction over the Receiver, it has original, concurrent jurisdiction over the claims that are at issue in the lawsuit pending before this Court.

## B. It Would Be Far More Efficient and Expedient for This Court to Hear the Trustee's Claims

The Trustee has filed a motion to stay with the D.C. Court asking that it stay the proceeding before it so that the Trustee's claims can be heard by this Court. The reasons justifying the D. C. Court's stay are the same as the reasons why this Court should proceed with the adjudication of the Trustee's claims.

### 1. Numerous claims and issues pending in this Court will directly impact other claims asserted in this case, making it more appropriate for this Court to hear these claims

The Receiver has asserted numerous claims in this Court against the Bankruptcy Estate exceeding $2 billion. The Trustee has now filed in this Court its objections to those claims on numerous grounds and has asserted the preferential and fraudulent transfer claims that the Receiver wants the D.C. Court to decide. Under bankruptcy law, this now becomes part of the claims allowance process. As a result, how this Court decides other issues in the Trustee's Objection to Claim will directly and materially impact the resolution of these claims. This Court's actions could do so for at least five reasons.

First, Section 502(d) of the Bankruptcy Code mandates that the Bankruptcy Court disallow any claim in which the claimant, as here, holds transfers "avoidable" as a preference or fraudulent transfer. That issue is squarely before the exclusive jurisdiction of this Court and it makes little sense to separate - in two separate courts - the issue of whether a claimant holds

17

transfers avoidable under the Bankruptcy Code, and whether the claimant's claim should be disallowed. Rather, this Court should decide both issues.[5]

Second, the Receiver has asserted a priority capital maintenance claim against the bankruptcy estate in an amount exceeding $1.4 billion. If the Receiver is correct - which the Trustee vigorously disputes - then several of the downstream transfers which are part of the Objection to Claim may be avoidable preferences (unless such Capital Maintenance Obligation is itself set aside as a fraudulent transfer as the Trustee has pled in the alternative in the Objection to Claim). If the Trustee is correct and such claim is disallowed, then those downstream transfers must be disallowed as fraudulent transfers. Either way, this Court must determine whether the Receiver has a valid capital maintenance claim before determining whether any downstream transfers constitute preferences or fraudulent transfers. Once again, it makes more sense for this Court to decide all of these issues, rather than having them decided piecemeal.

Third, the Receiver itself has asserted several affirmative defenses under Title 11 to the preference and fraudulent transfer claims asserted herein. Those defenses are best considered by this Court.

Fourth, if the Trustee is correct and is successful in his preference and fraudulent transfer causes of action, Section 502(h) of the Bankruptcy Code may give the Receiver an unsecured claim against the bankruptcy estate for the amount of any transfers returned.

Fifth, if it turns out that both the Trustee and the Receiver have claims against the other, under the Bankruptcy Code and applicable law, the Trustee may have a secured claim by right of

---

[5] Indeed, if what the Receiver has said is true – that Downey Savings will not have sufficient assets to make a distribution to unsecured claims – then the only practical impact of the Trustee's preferential and fraudulent transfer claims will be a defense to (and resulting disallowance of) the Receiver's claim against the bankruptcy estate (under various theories of setoff, offset, recoupment and other legal and equitable rights) rather than any actual return of the transfers to the estate. See www.fdic.gov/bank/individual/failed/downey.html (citing Federal Register/Vol. 75, No. 147/Monday, August 2, 2010/Notices 45114. Again, this supports having this Court, not the D.C. Court, decide the claims, because any relief ordered by the D.C. Court might be futile and incomplete.

18

setoff, offset, right of recoupment, or other legal or equitable rights. See 11 U.S.C. §§ 506(a) and 553.

In sum, it makes far more sense for this Court to reach a decision on all of these issues that would adjudicate the debtor-creditor relationship between the Debtor and the Receiver in the Bankruptcy Case.

## 2. It Would Be More Efficient for this Court to Decide The Claims Asserted by the Trustee

Given the foregoing, there is no question that it would be a more efficient use of judicial resources for this Court to decide the Trustee's preferential and fraudulent transfer claims as part of the overall claims allowance process now occurring in this Court. See Foster-Eli v. Beretta U.S.A. Corp., 163 F. Supp. 2d 67, 71 (D.D.C. 2001) ("[T]he desirability of avoiding piecemeal litigation favors abstention. Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.") (internal citations and quotation marks omitted).

In addition, on December 21, 2010, Wilmington Trust, as indenture trustee for the bondholders holding over $200 million in debt, filed an objection to the Receiver's claims. Again, it makes sense to have the claims allowance process proceed in the Bankruptcy Court.

## 3. The Trustees' claims were filed first in this Court

Lastly, "a court that assumes jurisdiction over property first may exercise that jurisdiction to the exclusion of other courts." Foster-Eli, 163 F. Supp. 2d at 71. The Trustee filed its preferential and fraudulent transfer claims first in this Court. To the extent that the Trustee's claims here relate to property that may be part of the bankruptcy estate, any other court (*e.g.*, the D.C. Court) is barred from making any determinations as to the ownership of that property. See In re Devitt, 126 B.R. 212, 215 (Bankr. D. Md. 1991) (finding that "once equitable jurisdiction

19

has been properly invoked it will proceed to render a full and complete disposition of the controversy. This is obvious, not only to prevent a duplication of efforts and a multiplicity of suits, but ... because the bankruptcy court alone has exclusive jurisdiction to determine dischargeability of debts..."); In re Rare, 298 B.R. at 764 ("Defendants have taken it upon themselves to make the determination of what is and is not property of the bankruptcy estate. They did, and continue to do so, at their peril, for it lies within the exclusive province of the bankruptcy courts to determine what interests are part of the estate.").

### 4.     The D.C. Court has shown a preference to let Bankruptcy Courts decide these sorts of claims

The D.C. Court recently stayed a claim brought by a trustee against the FDIC pending the resolution of concurrent proceedings in the Bankruptcy Court. In Washington Mutual, Inc. v. FDIC, Civil Action No. 09-533 (RMC) ( D.D.C. January 7, 2010), attached as Exhibit C, the D.C. Court granted the debtor's motion to stay the case, finding that the interest in avoiding piecemeal litigation, the filing of the bankruptcy case prior to the pending lawsuit in that court, the bankruptcy court's exclusive mandate to determine what is property of the estate together justified the staying of the case pending the outcome of the bankruptcy court proceedings.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court deny the

FDIC's Motion.

Respectfully submitted,

Dated: January 3, 2011
Wilmington, DE

**FOX ROTHSCHILD LLP**

By:    */s/ L. Jason Cornell*
L. Jason Cornell (DE Id. No. 3821)
919 North Market Street, Suite 1300
Wilmington, DE 19801-3046
Tel (302) 654-7444/Fax (302) 656-8920
jcornell@foxrothschild.com

-and-

Michael Menkowitz
William H. Stassen
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Tel (215) 299-2897/Fax (215) 299-2150
mmenkowitz@foxrothschild.com
wstassen@foxrothschild.com

-and-

Raymond M. Patella
1301 Atlantic Avenue
Midtown Building - Suite 400
Atlantic City, NJ 08401
Tel (609) 572-2254/Fax (609) 348-6834
rpatella@foxrothschild.com

*Attorneys for Montague S. Claybrook,*
*Chapter 7 Trustee for the Estate of Downey*
*Financial Corp.*

21